The opinion of the court was delivered by
Royce, J.
— By the case stated, the parties have referred us to the note as endorsed by the defendant, but not to the declaration or pleadings. Of course, no question properly arises as to the particular mode of declaring, but only as to the lia-; bility of the defendant upon the facts agreed to. And if it shall be found that he is liable to be sued upon the note as a co-signer with Tilton; or as having, in effect, incurred the re *645 sponsibility of a maker by an absolute promise to pay, either in or upon the note, then judgment must be rendered for the plaintiff. But if his undertaking was destitute of a legal consideration, or qualified with any of the conditions now urged in argument, the action does not appear to be supported.
As the defendant is stated to have made the endorsement in pursuance of his previous verbal promise to see the note paid, the supposed obligation of that promise must be treated as the consideration for the endorsement. The promise evidently operated as an inducement with the plaintiff, to accept the note of Tilton in payment of the defendant’s debt. He received the note, accompanied with the promise, relying on both as a satisfaction of the debt. It does not appear but that by the law of Canada the promise might have been enforced. If, however, it should be deemed a promise collateral to the note, and therefore invalid under the statute of frauds, still, it created that species of moral obligation which might well sustain the subsequent express contract of endorsement. The proper distinctions are frequently overlooked, where we find moral obligation mentioned in the books as a consideration for an express promise; and perhaps no rule on the subject has ever been laid down, sufficiently extensive and accurate to govern every case. It is sufficient for the present purpose to mark the distinction between those moral duties to which the law never extended a remedy, and those from which the original sanctions of the common law have been withdrawn. The latter are admitted to form a good consideration for an express promise, while the former, for the most part, do not. The case of Mills vs. Wyman, (3 Pick. 207,) is an instance of the former kind; and a promise to pay a debt barred by the statute of limitations, to execute a trust, or discharge an obligation, rendered inefficacious by the statute of frauds, are familiar examples of the latter. We have no doubt that the defendant incurred a legal liability of some sort, by endorsing the note in the manner stated.
It remains to be determined whether the defendant’s engagement was absolute or conditional. A blank endorsement is supposed to express the whole contract intended to be entered into by the endorser. The holder of the security is accordingly authorized to fill up the endorsement in conformity to such contract. And between the immediate parties, extrinsic evi *646 dence may generally be resorted to, in order to ascertain their actual intentions. In the absence of such evidence, the law ' implies the intention, and settles the terms of the contract accordingly. Were this the case of a common mercantile endorsement, the implied terms and conditions of the contract, as settled by the law merchant, are well known. But the defendant was not a party to the note: no title to sue upon it could be traced through him, nor did his endorsement pass any interest in the note, or the sum of money secured by it. He came in as an apparent stranger to the contract, and added his personal responsibility for the plaintiff’s benefit. The only case, within my recollection, in which such a contract has ever been considered by this court, was that of Barrows vs. Lane and Benham, 5 Vermont Reports, 161. And there the question presented was not directly upon the nature or extent of the endorsor’s implied liability, but upon the competency of parol evidence, to show the actual agreement under tvhich the endorsement was made. That the interests of a fcommon endorsor require the existing rules as to demand and notice, is sufficiently obvious. Without an observance of those rules, his remedies against other parties to the bill or note, might be wholly unavailing. And similar reasons may generally apply, where the owner of a demand transfers it, accompanied with his own responsibility for its due payment or ultimate col-leetion. The case is otherwise where there is no transfer cf the demand; but after it has taken effect between the proper parties, the security of a third person’s name is simply added to it. Here is no presumption that he acts upon a consideration connected with the instrument, or has any interest to be affected by the want of diligence against other parties, or of notice to himself. Hence it seems to result, that while the transaction sufficiently imports an undertaking to pay, it furnishes no satisfactory ground for affixing qualifications to the promise. Accordingly we find it settled in Massachusetts, by a long course of decisions, that the undertaking in such a case as the present, is absolute, and that the party is liable to be sued as a signer of the note. And in New-York, the engagement contracted in this manner, and there denominated an absolute guaranty, is held to be equally unconditional. While we adopt these views as to the nature of the contract, we have no occasion to notice the difference (if any real'difference exists) between an absolute guaranty and a promise in the lan *647 guage of the note. Either is sufficient for the present purpose, as they equally import an unqualified promise of payment.
If we recur to the facts in the case, for evidence of the defendant’s actual intention, we are led to the same conclusion. The debt for which the note was given was originally his, and he had promised that the note should be duly paid. That promise he felt to be obligatory upon him, and, as the case states, he made the endorsement in pursuance of it. By this is to be understood, that he intended the endorsement to be evidence of the same liability to which he was before subject by the terms of his verbal promise. But as that promise is stated in the case, the defendant does not appear to have qualified it with any conditions, requiring diligence against Tilton, or notice to himself. It was an absolute promise, at least after Tilton had made default of payment. And such being the recognized obligation of the defendant by his promise, there is no good reason to infer, that he intended to assume a different and more restricted obligation by the endorsement.
Judgment of the county court affirmed.